IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

INVITROGEN CORPORATION,

       Plaintiff,          ORDER

 v.

                      08-cv-599-slc

OXFORD BIOMEDICAL RESEARCH, INC., and
VANDERBILT UNIVERSITY,

       Defendants.

---

In this lawsuit, plaintiff Invitrogen Corporation seeks a declaration of noninfringement and invalidity with respect to U.S. Patent 5,886,157, a patent owned by defendant Vanderbilt University and licensed exclusively to defendant Oxford Biomedical Research, Inc. More immediately, Vanderbilt seeks to be dismissed from this lawsuit on the ground that this court lacks personal jurisdiction over it. *See* dkt. 23 (motion to dismiss original complaint) and dkt. 44 (motion to dismiss first amended complaint, relying on previously-filed briefs). Oxford has not joined Vanderbilt's motion to dismiss.

Before considering plaintiff's claim or Vanderbilt's motion, the history of the parties' dispute compels me to ask: why is this case here at all? In its complaint, plaintiff explains why it seeks a declaration of invalidity: defendant Oxford entered into a sublicensing agreement with PanVera regarding use of the technology covered by a license Oxford received from Vanderbilt. After plaintiff acquired PanVera, Oxford claimed that plaintiff breached the agreement, and Oxford sued plaintiff in Michigan state court. Plaintiff removed the case to federal court on November 29, 2005. *See* Case No. 5:05-cv-60274 (E.D. Mich., removed Nov. 29, 2005) Plaintiff's defense in the Michigan lawsuit is that the agreement has expired.

However, in plaintiff's complaint in the instant lawsuit, it alleges that in Oxford's summary judgment materials, Oxford's position is "that because the '157 patent claims cover the LICENSED MATERIALS, the . . . [a]greement would not terminate until the '157 patent expires in 2016." *See* Am. Compl., dkt. 37 at ¶ 24. In addition, Oxford's experts have calculated its damages from plaintiff's alleged breach based on the assumption that the agreement is in effect until 2016 as a result of the '157 patent.

All of this strongly suggests that the Michigan lawsuit is the proper forum for resolution of plaintiff's concerns regarding the '157 patent. After all, if plaintiff's description of the Michigan lawsuit is accurate, then Oxford cannot win its claims against plaintiff without a determination that the '157 patent is enforceable. *National Health Federation v. Weinberger*, 518 F.2d 711 (7th Cir. 1975) (declaratory relief may be refused if it is being sought merely to determine same issues involved in case already pending). All this being true, it appears that plaintiff had little choice but to open a second front in this war: according to plaintiff, it *tried* to amend its answer in the Michigan lawsuit to include a request for declaratory relief regarding the scope of the '157 patent and its validity, but the district judge denied the motion, concluding that the case was "a matter of contract interpretation and has no relation to the validity of the patent or to patent infringement." Am. Compl. at ¶30.

So here we are. Although it probably would be inappropriate for this court to issue any rulings on the merits until the Michigan lawsuit is resolved (in the event that the Michigan court does decide any issues relating to infringement or validity), this does not bar consideration of Vanderbilt's dismissal motion because this will not require resolution of any issues that could affect the Michigan litigation. Vanderbilt's motion originally included an argument that

2

plaintiff's complaint failed to state a claim upon which relief may be granted, but defendant withdrew that argument when plaintiff amended its complaint to include more specific allegations. Now Vanderbilt has renewed its motion to dismiss with respect to the amended complaint on the sole ground that it does not have sufficient contacts with Wisconsin to make an exercise of jurisdiction appropriate here. *See* dkt. 44.

Plaintiff has the burden to show that Vanderbilt may be sued in Wisconsin, *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 n.11 (7th Cir. 2003). This means plaintiff must show that jurisdiction is consistent with the requirements of both due process and the Wisconsin long-arm statute, Wis. Stat. § 801.05. *Silent Drive, Inc. v. Strong Industries*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). Because Vanderbilt has focused on the requirements of federal law, I will do the same.

In arguing that jurisdiction is appropriate because of contacts arising out of this suit (otherwise known as "specific jurisdiction"), plaintiff focuses on the fact that PanVera is located in Wisconsin. But Vanderbilt doesn't have an agreement with PanVera: the agreement is between PanVera and Oxford. When a plaintiff is seeking a declaration of noninfringement, specific jurisdiction "arises out of or relates to the activities of the defendant patentee *in enforcing the patent or patents in suit*." *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, – F.3d –, 2008 WL 5216005, *6 (Fed. Cir. Dec. 16, 2008) (emphasis added). Because Vanderbilt is not a party to the agreement, it cannot be said that Vanderbilt is using that agreement to "enforc[e] the patent" in Wisconsin. In fact, the '157 patent is not even mentioned in Oxford's agreement with PanVera.

3

Plaintiff says that any contacts Oxford has with PanVera may be "attributed" to Vanderbilt because Oxford is Vanderbilt's exclusive licensee of the '157 patent, citing *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356 (Fed. Cir. 2006). I will assume for a moment that plaintiff is right, that actions Oxford took under its license with Vanderbilt may be imputed to Vanderbilt. This does not help plaintiff's argument for specific jurisdiction over Vanderbilt unless there is a connection between any license that Vanderbilt gave to Oxford under the '157 patent and the license that Oxford gave to PanVera, or, to be more precise, unless Vanderbilt has engaged in "activities" that would communicate to plaintiff that Vanderbilt believes such a relationship exists. In other words, if Vanderbilt believes the two agreements are independent of each other, then Oxford's attempt to enforce its own license could not be attributed to Vanderbilt as a means of "enforcing the ['157] patent."

In fact, this is *plaintiff's* position in the Michigan lawsuit and in this case. Plaintiff's view is that whatever license Oxford may have received from Vanderbilt under the '157 patent has nothing to do with the agreement between PanVera and Oxford. Plaintiff says that *Oxford* has taken a contrary position in the Michigan suit, but Vanderbilt is not a party to that suit and plaintiff points to no evidence that Vanderbilt agrees with Oxford. Because plaintiff has the burden, that silence favors granting Vanderbilt's motion.[1]

---

[1] This raises the related question whether a case or controversy exists at all between plaintiff and Vanderbilt. If Vanderbilt has not threatened plaintiff with enforcement, it is not clear whether this court has subject matter jurisdiction to declare plaintiff's rights with respect to Vanderbilt. *Avocent Huntsville*, 2008 WL 5216005 at *25 n.2. Because I am dismissing Vanderbilt for lack of personal jurisdiction, I need not resolve that question. *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 127 S.Ct. 1184, *1191 (2007) ("[A] court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction.")

In any event, plaintiff overstates the holding in *Breckenridge*. The court did not issue a blanket rule that a patent holder and its exclusive licensee are interchangeable for the purpose of personal jurisdiction. Rather, the court stated:

> [w]here a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, *the inquiry requires close examination of the license agreement*. In particular, our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.

*Id.* at 1366. *See also Avocent Huntsville*, 2008 WL at 5216005, at *10 ("Even a patentee's exclusive licensing and enforcement activities in the forum raise questions as to the propriety of an assertion of personal jurisdiction over a non-resident defendant.")

In this case, plaintiff does not argue that the licensing agreement gives any control to Vanderbilt. Rather, plaintiff says only that Vanderbilt was "involved in the negotiations" for the agreement between plaintiff and Oxford. This, however, does not matter under *Breckenridge* if Vanderbilt did not become a party to the contract or retain any control over it after it was signed.

Plaintiff tepidly argues that an exercise of *general* jurisdiction is appropriate because Vanderbilt has agre`ements with unidentified academic institutions and companies in Wisconsin "to provide and obtain materials for research, to evaluate Vanderbilt technology, and to provide licenses for software" and because Vanderbilt has "one continuous business relationship" in Wisconsin involving an exclusive license for an unrelated patent. Dkt. 35, at 12-13. Although plaintiff's list of Vanderbilt's forays into Wisconsin includes "recruits faculty" and "solicits

5

donations" from Wisconsin, plaintiff appears to concede in its brief that such contacts cannot give rise to general jurisdiction. *Id.* at 13 (citing *Gehling v. St. George's School of Medical, Ltd*, 773 F.2d 539 (3d Cir. 1985)).

It is not surprising that plaintiff cannot cite a single case in which a court found that an exercise of general jurisdiction was appropriate under similar circumstances. General jurisdiction requires a defendant's contacts with the state to be so continuous and systematic that it would be fundamentally fair to require it to answer in that state's court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Foundation*, 338 F.3d at 787, emphasis in original. In other words, a court's finding of general jurisdiction is a conclusion that the defendant's contacts are "so extensive to be tantamount to [the defendant] being constructively present in the state." *Id.* If Vanderbilt's meager Wisconsin contacts were sufficient to pass this test, then the concept of personal jurisdiction would be meaningless. No one should reasonably anticipate being haled into court as a result of research agreements and a business relationship having nothing to do with the current law suit. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.* 28 F.3d 572, 580 (7th Cir. 1994) ("When a defendant . . . does not conduct business generally in the forum state but has transacted some business there . . . he is considered subject to the specific, rather than the general, jurisdiction of the state's courts.").

Because plaintiff has not made a prima facie showing of personal jurisdiction over Vanderbilt, *see Hyatt International Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002), Vanderbilt is entitled to be dismissed from this lawsuit.

ORDER

It is ORDERED that defendant Vanderbilt University's original motion to dismiss, dkt. 22, is DENIED as moot, and its renewed motion to dismiss for lack of personal jurisdiction, dkt. 44, is GRANTED.  Plaintiff's complaint is DISMISSED as to defendant Vanderbilt.

Entered this 30th day of December, 2008.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge